**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SYNERGY REORG, LLC, *et al.*, | ) | Case Nos. 26-464-ELG<br>26-465-ELG<br>26-466-ELG<br>26-467-ELG<br>26-468-ELG<br>26-469-ELG |
| Debtors.[1] | ) | (Joint Administration Pending) |

**DECLARATION OF PETER ESCHMANN**

In accordance with 28 U.S.C. § 1746, I, Peter Eschmann, declare as follows:

1. I am over 18 years of age and competent to make this declaration.

2. I currently serve as the managing partner and chief compliance officer of Acme Credit Partners LLC.

3. Except as otherwise indicated herein, all the facts set forth in this declaration are offered to the best of my knowledge, information, and belief based on my personal knowledge, professional experience, industry knowledge, and the documents and information referenced herein. This declaration describes my knowledge and analysis at this time based on the information currently available to me. It does not attempt to capture every detail of every topic addressed. I reserve the right to revise, amend, or supplement my testimony as appropriate in my judgment to address other matters or to the extent additional or updated information becomes available to me.

[1] The debtors in these cases are Synergy Reorg, LLC.; Synergy CHC Corp.; Synergy CHC Inc.; Hand MD Corp.; Synergy CHC Mexico; and NomadChoice Pty, Ltd. (collectively, "**Debtors**").

## I. The Credit Agreement and ACP's Liens

4. On May 30, 2025, Debtor Synergy CHC Corp. ("**Synergy**"), the ultimate parent of all of the Debtors, as borrower (in such capacity, the "**Borrower**"), entered into a $17.5 million senior secured term facility with ACP Agency, LLC ("**ACP**"), as administrative agent and collateral agent, and ACME Credit Partners Fund I, LP, an affiliate of ACP, as lender, which is guaranteed by Debtors Synergy CHC Inc. and Hand MD Corp. (together with Synergy, the "**Loan Parties**"). This loan was secured by liens on substantially all assets of the Loan Parties.[2] The full amount of the $17.5 million was advanced to Synergy (and outstanding) by December 31, 2025.[3]

## II. Synergy's Multiple Events of Default

5. Synergy quickly went into default under the Credit Agreement in multiple respects. First, the Credit Agreement prohibited the Loan Parties from making interest payments on certain subordinated notes ("**Sanders Notes**") unless several conditions are satisfied, including that

[2] Term Loan Credit Agreement, dated as of May 30, 2025, among Synergy CHC Corp., as Borrower, the Guarantors party thereto, ACME Credit Partners Fund I, LP, as Lender, and ACP Agency, LLC, as Administrative Agent and Collateral Agent (together with any amendments, joinders, and modifications the "**Credit Agreement**"), attached as **Exhibit 1**; Joinder Agreement, dated as of June 9, 2025, by and among the Borrower, Synergy CHC Inc., ACP Agency, LLC and Hand MD Corp., a Delaware corporation, as Additional Guarantor, **Exhibit 2**.

[3] *See, e.g.*, Pledge and Security Agreement, dated as of May 30, 2025, by the Borrower and Synergy CHC Inc. in favor of ACP Agency, LLC, **Exhibit 3**; Trademark Security Agreement, dated as of May 30, 2025, by the Borrower in favor of ACP Agency, LLC, recorded with the U.S. Patent and Trademark Office on May 30, 2025 at Reel/Frame 8883/0576 (covering, among others, FOCUS FACTOR, Reg. No. 2,414,522), **Exhibit 4**; Canadian Security Agreement, dated as of May 30, 2025, **Exhibit 5**; Canadian Guarantee, dated as of May 30, 2025, **Exhibit 6**; Canadian Trademark Security Agreement, dated as of May 30, 2025, **Exhibit 7**; Canadian Notice of Security Interest in Intellectual Property, dated as of May 30, 2025, filed with the Canadian Intellectual Property Office, **Exhibit 8**; UCC-1 Financing Statement, Initial Filing No. 2025478218-3 (Nevada Secretary of State, filed May 30, 2025) (Synergy CHC Corp.), **Exhibit 9**; UCC-1 Financing Statement, Initial Filing No. 2025 4127426 (Delaware Department of State, filed June 9, 2025) (Hand MD Corp.), **Exhibit 10**; UCC-1 Financing Statement, Doc. No. 2025053272 (District of Columbia, filed May 30, 2025) (Synergy CHC Inc.), **Exhibit 11**; Deposit Account Control Agreement, dated as of June 5, 2025, among the Borrower (d/b/a Factor Nutrition), ACP Agency, LLC and Banc of California ("**DACA**"), **Exhibit 12.**

Synergy maintain a minimum liquidity amount of $2 million.[4] Though that liquidity condition was unmet, the Loan Parties made monthly interest payments on account of the subordinated Sanders Notes from June 2025 through January 2026, skipping only August.[5] In addition, the Loan Parties failed to deliver the compliance certificates required.

6. The Credit Agreement also required the Loan Parties to extend the maturity date of the Sanders Notes from 2026 to 2029, which the Loan Parties failed to do.[6] The Loan Parties were informed of the need to do so as soon as possible via email on August 26, 2025, and agreed to a form of amendment on August 31, but never delivered an executed copy.

7. On January 1, 2026, Boombod Ltd., "an entity 100% indirectly owned by Jack Ross,"[7] failed to pay a promissory note delivered to ACP.

8. This triggered a requirement for Mr. Ross to deliver an equity pledge agreement pledging shares in Synergy's stock with a market value equal to the outstanding amount, which Mr. Ross failed to do, constituting a further Event of Default.[8]

9. ACP gave notice on February 2, 2026 of the foregoing Events of Default.[9]

---

[4] Credit Agreement § 7.2(m)(ii)(C); *see also* Credit Agreement § 1.1, "Sanders Notes Interest Payment Conditions" definition.

[5] Notice of Events of Default, Reservation of Rights letter, dated February 2, 2026, ("**Reservation of Rights**") **Exhibit 13**.

[6] Credit Agreement § 7.2(b) *see also*, Credit Agreement § 1.1, "Permitted Indebtedness" definition, clause (m), requiring that Subordinated Indebtedness "not mature prior to the date that is 91 days after the Stated Term Loan Maturity Date."

[7] Synergy CHC Corp., Amendment No. 6 to Form S-1 (filed Oct. 10, 2024), **Exhibit 14**.

[8] Credit Agreement §8.1(s).

[9] Reservation of Rights.

10. On February 2, 2026, the same day ACP sent the default notice, ACP demanded turnover of every interest payment on the Sanders Notes.[10] The Subordination Agreement between ACP and the holder of the Sanders Notes requires both that any improperly received distributions be delivered to ACP and that, until this is done, those distributions be held in trust by Sanders.[11]

11. Synergy disputed all three defaults on February 3, 2026.[12] Synergy further demanded that ACP rescind the notice as void *ab initio* and threatened lender-liability claims if ACP refused. ACP reiterated its default notice on February 4, 2026.

**III. ACP's Limited Waivers of Defaults**

12. On March 24, 2026, ACP and Synergy entered into two agreements: the "Second Amendment," amending the terms of the Credit Agreement, and the "Limited Waiver," giving Synergy substantial relief from defaults it had already committed.[13] Through the Limited Waiver, ACP waived four specified Events of Default, including the three defaults identified in the February 2 notice and Synergy's missed March 2 cash interest payment.[14] ACP also waived the default interest triggered by those defaults.[15]

---

[10] Demand for Turnover Under Subordination Agreement, dated February 2, 2026, from ACP Agency, LLC to Don A. Sanders and Sanders Morris Harris LLC (Attn: Steve Mangold), **Exhibit 15**, at 1.

[11] Subordination Agreement, dated as of May 30, 2025, **Exhibit 16**, §§ 2.2(a), 2.2(g).

[12] Letter from W. David Mannheim, Nelson Mullins Riley & Scarborough LLP, to Tanner Frei, KTBS Law LLP, dated February 3, 2026, **Exhibit 17**, at 1–2.

[13] Limited Waiver to Term Loan Credit Agreement ("**Limited Waiver**"), dated as of March 24, 2026, **Exhibit 18**; Second Amendment to Term Loan Credit Agreement ("**Second Amendment**"), dated as of March 24, 2026, **Exhibit 19**.

[14] Limited Waiver, recitals and § 1.A.

[15] *Id.*

## IV. The Cedar Cash Advances

13. On April 1, 2026, ACP learned that, in the preceding months, Synergy entered into three cash advance agreements totaling approximately $5.7 million with Cedar Advance, LLC ("**Cedar**"). ACP determined that two of these advances, which were made after the Loan Parties' entered into the Credit Agreement, constituted impermissible indebtedness under the Credit Agreement, and that the liens purportedly granted to Cedar by the cash advance agreements were also prohibited. To the best of my knowledge and belief, Cedar has not filed a UCC-1 financing statement to perfect its purported lien on the Debtors' property.

14. On May 28, 2026, ACP entered into an agreement with Synergy (the "**Forbearance Agreement**") in which ACP notified Synergy that (i) the liens granted by Synergy in favor of Cedar, (ii) the indebtedness owed to Cedar, and (iii) the payments of that indebtedness made to Cedar each constituted an Event of Default.[16] ACP agreed to forbear these additional Events of Default, on the basis that the FOCUSfactor brand would be sold to Mountainview Consumer Products, LLC and the debt would be paid in full. The Forbearance Agreement accordingly required the Borrower to provide ACP access rights to the data room for the proposed transaction with Mountainview.[17] The Forbearance Agreement also restricted payments to Cedar.[18] Synergy's reporting at this time assumed that ACP would be paid in full.[19] However, Synergy

---

[16] Forbearance Agreement, dated as of May 28, 2026, by and among the Borrower, the Guarantors, the Lenders party thereto and the Agents, **Exhibit 20**.

[17] *Id.* § 1.C(iii)(a).

[18] *Id.* § 1.C(iii)(b).

[19] Synergy CHC Corp., Current Report on Form 8-K (May 11, 2026), Item 1.01 (Equity Purchase Agreement with Hudson Global Ventures, LLC, dated May 8, 2026), **Exhibit 21**; Synergy CHC Corp., Quarterly Report on Form 10-Q for the quarter ended March 31, 2026 (filed May 14, 2026), **Exhibit 22**.

resisted in several instances when asked to comply with the Forbearance Agreement's reporting requirements.

### V. The Loss of the Debtors' Major Customer and Further Defaults

15. On July 15, 2026, Synergy discovered that Costco Wholesale had chosen to cease carrying Synergy's FOCUSfactor products in its stores.[20] In public filings, Synergy stated that the loss would have a "material adverse effect on the Company's business, results of operations, liquidity and financial condition," and that it was "evaluating available financing and other strategic alternatives.[21] Costco represented approximately 58% of Synergy's revenue. The Credit Agreement required Synergy to inform ACP of "any event or development that could reasonably be expected to have a Material Adverse Effect" within three days.[22] Synergy did not tell ACP for five days.

16. ACP wrote to Synergy's full board on July 29, 2026, identifying this breach, together with the Company's failure to comply with the reporting requirements set out in the Forbearance Agreement—the last forecast ACP had received was dated June 22, 2026—and setting out the board's fiduciary duties in the zone of insolvency, including the duty to be attentive to conflicts of interest that might benefit insiders and transactions that could be challenged as fraudulent transfers, including transfers to insiders or affiliates.

17. On August 3, 2026, Synergy failed to make the interest payment required, which, on the expiration of the three-day cure period, constituted an Event of Default under the Credit Agreement.[23] Under the terms of the Forbearance Agreement, it also constituted a termination

---

[20] Synergy CHC Corp., Current Report on Form 8-K (July 29, 2026), Item 8.01, **Exhibit 23**.

[21] *Id.*

[22] Credit Agreement § 7.1(a)(viii).

[23] Credit Agreement § 8.1(a).

event, thus terminating the forbearance period and resulting in an approximately $400,000 forbearance fee becoming due.[24] This amount was not paid.

## VI. Forbearance Termination and DACA

18. On August 11, 2026, ACP formally gave notice of default and terminated the Forbearance Agreement.[25] The same day, ACP requested that Synergy deliver a proposed release. On August 13, Synergy delivered a proposed draft release, purporting to release an unnamed "[officer] [director] [officer and director]" of Synergy from "all known and unknown claims" in exchange for their resignation, such that ACP could take control of Synergy.[26]

19. On August 18, 2026, ACP informed Synergy that it had exercised its right of control over Synergy's primary bank account at Banc of California under its deposit account control agreement ("**DACA**") and asked for the read-only access to the bank account required by the DACA.[27] It was not provided.

---

24 Forbearance Agreement §§ 1.A, 1.C(i), 1.C(iii)(c), 1.C(iv), 1.C(x).

25 Notice of Forbearance Termination Event, dated August 11, 2026, from ACP Agency, LLC to Synergy CHC Corp. (Attn: Jack Ross), **Exhibit 24**.

26 Email from Peter Eschmann to Jack Ross, dated August 10, 2026; email from Trent MacDonald to Peter Eschmann and Jack Ross, dated August 11, 2026, 5:31 p.m.; emails from Peter Eschmann to Trent MacDonald, dated August 11, 2026, 5:44 p.m. and August 12, 2026, 2:02 p.m.; emails from Trent MacDonald to Peter Eschmann, dated August 11, 2026, 6:11 p.m. and August 12, 2026, 2:29 p.m.; and email from Trent MacDonald to Peter Eschmann, dated August 13, 2026, 9:34 a.m., **Exhibit 25**; Proposed Release Agreement, dated August 13, 2026, **Exhibit 26**.

27 Email from Peter Eschmann to Jaime Fickett, dated August 18, 2026, 4:12 p.m.; email from Trent MacDonald to Peter Eschmann, dated August 19, 2026, 8:57 a.m.; Peter Eschmann to Trent MacDonald, dated August 19, 2026, 9:16 a.m.; and email from Trent MacDonald to Peter Eschmann, August 19, 2026, 9:33 a.m., **Exhibit 27**; DACA § 10.

20. ACP issued a Notice of Acceleration on August 25, 2026, terminating all commitments and declaring Synergy's obligations immediately due and payable.[28] A total of $18,898,424.70 was outstanding under the Credit Agreement as of August 21, 2026.[29]S

**VII. The Insider Transfers and Movement of Funds**

21. On information and belief, Synergy paid $3,873,848 to insiders in the 12 months before the petition date, approximately $2.70 million of it to Mr. Ross's family members and to entities he wholly owns, against a covenant that caps cash compensation "pursuant to any employment agreements, consulting services contracts (including the Consulting Services Agreement), management services contracts, labor services contracts or similar agreements or arrangements" at $1 million per fiscal year[30] and permits affiliate transactions only on arm's-length terms "fully disclosed to the Agents prior to the consummation thereof."[31] On information and belief, Mr. Ross has failed to comply with these covenants.

22. After the forbearance terminated when Synergy missed the required August 3, 2026 interest payment, ACP sent to the Banc of California a shifting control notice, which, pursuant to the terms of the DACA, granted ACP exclusive control over Synergy's primary collection account at the Banc of California (the "**U.S. DACA Account**"). This is permitted following the occurrence of an Event of Default under section 7.1(j)(iv) of the Credit Agreement and the terms of the DACA.

---

[28] Notice of Acceleration, dated August 25, 2026, from ACP Agency, LLC to Synergy CHC Corp., Synergy CHC Inc. and Hand MD Corp. (Attn: Jack Ross), **Exhibit 28** at 1–2.

[29] Synergy CHC Corp., Current Report on Form 8-K (Aug. 26, 2026), Item 2.04 (signed by Jack Ross, Chief Executive Officer), **Exhibit 29**.

[30] Credit Agreement § 7.2(h); *see also* Credit Agreement § 1.1 "Permitted Restricted Payments definition, clause (d).

[31] Credit Agreement § 7.2(j).

23. ACP was then informed that Mr. Ross was contacting Synergy's account debtors and instructing them to divert payments away from that U.S. DACA Account, which they had historically paid into, and into other accounts where ACP had no DACA. The other accounts were "Excluded Accounts" under the Credit Agreement, not subject to the DACA requirement, only because they were required to be swept into the U.S. DACA Account.[32]

24. ACP also saw funds moved out of the U.S. DACA Account to accounts in Canada and Mexico, in amounts that cannot be squared with the revenue generated in those jurisdictions. In the past year Synergy has transferred over $2 million to the Canadian and Mexican entities, which upon information and belief, cannot be substantiated based on the level of sales in those two entities. Additionally, such transfers are not permitted under the Credit Agreement, which permits not more than $100,000 in funds to be on deposit at accounts which are not subject to a control agreement.[33] The Mexican subsidiary is also not a Loan Party, and the Credit Agreement caps investments in non-Loan Parties at $250,000 at any time outstanding, and prohibits such transfers altogether if a Default or Event of Default exists or if Liquidity is less than $2,500,000 after giving effect to such investment.[34] These are distribution entities and should not require this level of investment nor was this permitted under the Credit Agreement.

25. When faced with these developments, ACP sent notification letters directing account debtors to pay ACP directly on receivables constituting proceeds of ACP's collateral. Again, this is specifically permitted under section 6(d)(i) of the Pledge and Security Agreement.

---

[32] Credit Agreement § 7.1(j).

[33] Credit Agreement § 7.1(j); *see also* Credit Agreement § 1.1 "Excluded Account" definition.

[34] Credit Agreement § 7.2(e); *see also* Credit Agreement § 1.1 "Permitted Investments" definition and "Permitted Intercompany Investments" definition.

ACP acted at all times consistent with the loan documents and in order to protect its interest in the property once it learned that Mr. Ross was diverting these funds.

**VIII. The Debtors' Bankruptcy Filings**

26. Without any prior notice to ACP, the Debtors filed for bankruptcy on September 4, 2026. Dkt. No. 1. Indeed, until the Debtors filed for bankruptcy, ACP was unaware of the existence of the entity Synergy Reorg, LLC ("**Synergy Reorg**"). On information and belief, Synergy Reorg was formed just days prior to the bankruptcy, on August 28, 2026, and has never generated any revenue, has no employees, and has no books or records. Additionally, as with the transfers made to the Mexican entity, the transfer of accounts receivable to Synergy Reorg were done in contravention of debtor's Credit Agreement covenants, which again flatly prohibit investments to non-Loan Parties if a Default or Event of Default exists or if Liquidity is less than $2,500,000 after giving effect to such investment.[35]

**IV. Conclusion**

27. ACP made reasonable, good faith efforts to work with the Debtors and Mr. Ross, and repeatedly granted the Debtors and Mr. Ross chances to cure events of defaults under the operative contracts. Despite these efforts, Mr. Ross and the Debtors misled ACP and sought to evade its valid and perfected liens. At all times, ACP believes it acted within its contractual rights and consistent with the law.

[35] Credit Agreement § 7.2(e); *see also* Credit Agreement § 1.1 "Permitted Investments" definition and "Permitted Intercompany Investments" definition.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information, and belief.

EXECUTED this 9th day of September, 2026

*/s/ Peter Eschmann*
Peter Eschmann